UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOWARD D. LARKIN | : | |
| | : | |
| Plaintiff | : | CIVIL NO. 1:16-cv-00614 |
| | : | |
| vs. | : | |
| | : | |
| WARDEN TERRY BROWNING, | : | (Judge Kane) |
| et al., | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

**Background**

On April 15, 2016, Plaintiff Howard D. Larkin, an inmate at the Tioga County Prison,[1] filed a complaint pursuant to 42 U.S.C. § 1983 against the following three individuals employed at that facility: (1) Terry Browning, Warden; (2) Joseph Cama, M.D.; and (3) Jim Isaacson, nurse. (Doc. No. 1.) Larkin claims that the Defendants violated his rights under the Eighth Amendment to the United States Constitution by denying adequate medical care. (Id. at 5.)

In support of the Eighth Amendment claim, Larkin alleges that on August 18, 2015, while leaving the shower at the Tioga County Prison he slipped on a wet floor and, in an attempt to "brace [his] fall," broke his little finger. (Id.) Larkin alleges that he "immediately put in a sick call request" and on August 20, 2015, was seen by a physician who diagnosed a broken finger based on the swelling and that an x-ray was ordered. (Id.)

---

1. Larkin is presently confined at the Quehanna Boot Camp, 4510 Quehanna Highway, Karthaus, Pennsylvania. (Doc. No. 8.)

Larkin does not identify the treating physician on August 21, 2015. (Id.) Larkin then alleges that an x-ray was performed on August 21, 2015, and that it confirmed that he had a broken finger. (Id.)

Larkin claims that Christopher Hobbie, a physician who reviewed the x-ray asked that a physical examination be performed to "correlate what the x-ray report stated" but the Defendants did not perform a physical examination and that Defendant Isaacson downplayed Larkin's injury and reported that there was no obvious swelling and possibly there was a joint deformity or fracture. (Id.) Larkin contends that Defendant Isaacson lied when he stated there was "no obvious swelling" and that his finger was broken for two days before he "was seen by medical staff." (Id.) Larkin admits that Defendant Isaacson fashioned "a temporary splint out of an ankle brace and advised [him] to wear it until he ordered a hand brace[.]" (Id.) Larkin claims that he never received the hand brace and was only given "Ibuprofen for the pain[.]" (Id.) Larkin alleges that Isaacson altered medical reports to "cover up his wrongdoing." (Id.)

Larkin also claims that on August 28, 2015 he had "a physical altercation with another inmate and during that altercation [he] broke/fractured [his] right hand[.]" (Id.) Larkin claims that he was sent to an outside hospital, Soldiers and Saliors Memorial, in Wellsboro, Pennsylvania, and an x-ray was performed at that hospital which revealed that "[his] left hand

was broken/fractured." (Id.) Larkin contends that the physician, who treated him at that hospital, ordered at the time of discharge that he be examined by a hand surgeon within seven days but that Defendants Cama and Isaacson altered medical records in an attempt to minimize his injury and cost of treatment.(Id.) He claims that the records were altered in such a fashion that when he was seen by an orthopedic physician on September 1, 2016, he was only evaluated for the injury to the left hand and his right hand was ignored which resulted in the right hand "heal[ing] crooked." (Id. at 5-6.)  Larkin states that he was seen by an orthopedic physician on several occasions, but was examined by a hand surgeon. (Id. at 6.) Larkin contends that on February 2, 2016, he was examined by an orthopedic physician who "wrote a prescription for 'PHYSICAL THERAPY' due to the non-movement of [his] first finger and that prescription was completely 'IGNORED' due to cost of 'THERAPY.'"(Id.)  Larkin claims that he is left-handed and the lack of physical therapy contributed to his alleged inability to "hold a pencil and/or other [items]."(Id.)  Larkin contends that Defendants Cama and Isaacson "downplayed" the injuries "in an attempt to minimize the 'COSTS' of treatment[.]" (Id.)

    Additionally, Larkin's complaint includes allegations regarding the manner in which his grievances were addressed. (Id. at 6.) Larkin attached to the complaint several exhibits, including grievances and Defendant Browning's responses.  Of

particular note is a response from Defendant Browning which states in toto as follows:

> Mr. Larkin your r/hand was not ignored you were seen by the medical dept and an x-ray was done. You were scheduled to be seen at the orthopedic office on 9-1-15 however on 8-28-15 you were involved in a physical altercation and subsequently broke you L/hand and you were seen by the prison medical dept and at the Soldiers and Sailors Hospital Emergency Room for this injury the day that it occurred. I spoke to the Medical Department and they advise that your next visit will be on September 22, 2015.
>
> You refused to wear the brace that was given to you from the Orthopedic office on 9/1/15 for your L/hand. [O]n 8-28-15 you were given a temporary brace and refused to wear it.
>
> You were refusing to take the medication stating that it upset your stomach and the Sergeant ordered a sandwich at med pass for you so you would take your medication. We are not ignoring anyone's needs I take a person's Health and welfare very serious as does our medical Department.

(Id. at 10.) Also, attached to the complaint were several medical records, including the x-ray report from Dr. Hobbie which reveals that the x-ray was performed by Lackawanna Mobile X-Ray on August 21, 2015, at 8:17:51 a.m. (Id. at 14.) Dr. Hobbie's impression after reviewing the x-ray films was that Larkin suffered a "[n]ondisplaced fracture at the base of the distal phalanx of the fifth right finger with overlying soft tissue swelling." (Id.) Dr. Hobbie did not, as claimed by Larkin, order that a physical examination be performed. (Id.) Instead he merely noted the x-ray should be "correlate[d] with physical exam." Prior to being sent for the x-ray, Larkin had already been

4

examined by medical personnel at the Tioga County Prison. (Id.) There is no indication a further examination by the prison medical department was necessary. (Id.)

Larkin requests injunctive relief,[2] compensatory damages in the amount of $350,000.00, and punitive damages in the amount of $100,000.00. (Id. at 3.) Along with his complaint, Larkin submitted a motion for leave to proceed in forma pauperis under 28 U.S.C. § 1915 and the authorization to have funds deducted from his prison account to have the filing fee paid in installments. (Doc. Nos. 2, 3.) For the reasons set forth below, Larkin's motion to proceed in forma pauperis will be construed as a motion to proceed without full pre-payment of the filing fee and granted, and the complaint will be dismissed for failure to state a claim upon which relief may be granted with leave to file an amended complaint.

---

2. It is well recognized that the adjudicatory power of a federal court depends upon the continuing existence of a live and acute controversy. Steffel v. Thompson, 415 U.S. 452, 459 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10. "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D. NY 1985) (citations omitted).
   Furthermore, "[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted). Larkin's claim for injunctive relief will be dismissed as moot because Larkin is no longer incarcerated at the Tioga County Prison.

**Discussion**

Because Larkin complains about "prison conditions," the screening provisions, 28 U.S.C. § 1915(e), of the Prison Litigation Reform Act ("PLRA") apply, given that Larkin is a prisoner proceeding in forma pauperis. The court has an obligation to dismiss a complaint under the PLRA screening provisions "at any time the court determines" the complaint is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from suit. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000); 28 U.S.C. § 1915(e)(2)(B).

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 556.) "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id., 127 S.Ct. at 1965 (quoted case omitted).

In resolving the question of whether a complaint states a claim, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. at 211 (quoted case omitted).

Furthermore, pro se parties are accorded substantial deference and liberality in federal court. Haines v. Kerner, 404 U.S. 519 (1972); Hughes v. Rowe, 449 U.S. 5 (1980). They are not, however, free to ignore the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 8 requires that a complaint contain a short and plain statement setting forth (1) the grounds upon which the court's jurisdiction rests, (2) the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief sought by the pleader.

Although there is not a heightened pleading standard in § 1983 cases, a § 1983 complaint in order to comply with Rule 8

must contain at least a modicum of factual specificity, identifying the particular conduct of the defendant that is alleged to have harmed the plaintiff, so that the court can determine that the complaint is not frivolous and a defendant has adequate notice to frame an answer. A civil rights complaint complies with this standard if it alleges the conduct violating the plaintiff's rights, the time and the place of that conduct, and the identity of the responsible officials.

A plaintiff, in order to state a viable § 1983 claim, must plead two essential elements: 1) that the conduct complained of was committed by a person acting under color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Natale v. Camden County Corr. Facility, 318 F.3d 575, 580-81 (2003); Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

A defendant's conduct must have a close causal connection to plaintiff's injury in order for § 1983 liability to attach. Martinez v. California, 444 U.S. 277, 285 (1980).[3] A prerequisite for a viable civil rights claim is that a defendant

---

3. The Martinez court explained: "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v. Pachtman, 424 U.S. 409, 417 [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Id.

8

directed, or knew of and acquiesced in, the deprivation of a plaintiff's constitutional rights. See Monell v. Dep't of Social Serv. of the City of N.Y., 436 U.S. 658, 694-95 (1978); Gay v. Petsock, 917 F.2d 768, 771 (3d Cir. 1990); Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

Larkin must allege that each Defendant was personally involved in the events or occurrences that underlie the claim. See Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003)(citations omitted). Liability may not be imposed under Section 1983 on the principle of respondeat superior. Capone v. Marinelli, 868 F.2d 102, 106 (3d Cir. 1989) (citing Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976)). Rather, "supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct." Id. at 106 n.7.

To establish an Eighth Amendment claim under § 1983, Larkin must show that the prison official acted with "deliberate indifference" to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 827 (1994) (citing Helling v. McKinney, 509 U.S. 25 (1993); Wilson v. Seiter, 501 U.S. 294 (1991); Estelle v. Gamble, 429 U.S. 97 (1976)). In other words, the official must know of and disregard an excessive risk to inmate health or safety. Natale v. Camden County Corr. Facility, 318 F.3d at 582; Farmer, 511 U.S. at 837. This standard "affords considerable latitude to prison medical authorities in the diagnosis and

treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment. . . which remains a question of sound professional judgment.'" <u>Little v. Lycoming Cnty.</u>, 912 F. Supp. 809, 815 (M.D. Pa. 1996) (quoting <u>Inmates of Allegheny Cnty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979).

Claims based upon the Cruel and Unusual Punishments Clause have both objective and subjective components. <u>Wilson v. Seiter</u>, 501 U.S. at 298. Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. <u>Id.</u> The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind." <u>Id.</u>

The objective component of an Eighth Amendment medical care claim, <u>i.e.</u>, whether a plaintiff's medical needs were serious, has its roots in contemporary standards of decency. <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992). A medical need is serious if it is one that has been diagnosed by a physician as mandating treatment or is one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991); <u>Monmouth County Correctional Institution Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987); <u>Ramos v. Lamm</u>, 639 F.2d 559, 575 (10th Cir. 1980), <u>cert. denied</u>, 450 U.S. 1041 (1981); <u>West v. Keve</u>, 571 F.2d 158, 162-63 n.6 (3d Cir. 1978). The serious medical need element

contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.  See Monmouth Cnty. Correctional Institution Inmates v. Lanzaro, 834 F.2d at 347; Archer v. Dutcher, 733 F.2d 14, 16-17 (2d Cir. 1984); Todaro v. Ward, 565 F.2d 48, 52 (2d Cir. 1977).

Assuming, without deciding, that Larkin's medical need was serious in the constitutional sense,[4] the allegations in the complaint illustrate that Larkin received medical attention.  At best, Larkin's complaint demonstrates his disagreement with the scope and extent of treatment by the medical personnel at Tioga County Prison.  Larkin in his complaint indicates that he was seen by medical personnel, sent for treatment at outside medical facilities, and provided medications.  Larkin's disagreement with the course of treatment, however, does not serve as a predicate to liability under § 1983. See White v. Napoleon, 897 F.2d at 108-110 (No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d at 762(claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another).

---

4.  Several courts have held that a broken finger is not a serious medical need. See, e.g., Jacobs v. Wilson, 2014 WL 3700553, at *5 (N.D.W.Va. July 24, 2014) and cases cited therein.

The allegations contained within the complaint establish efforts by the medical personnel at Tioga County Prison to provide Larkin with necessary medical care, and an attendant mental state that falls short of deliberate indifference.

Further, a complaint that a physician or a medical department was "negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. More than two decades ago, the Third Circuit held that "[w]hile the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990); see also Spruill, 372 F.3d at 235 ("Allegations of medical malpractice are not sufficient to establish a Constitutional violation.").

When an inmate is provided with medical care and the dispute is over the adequacy of that care, no Eighth Amendment claim exists. White v. Napoleon, 897 F.2d 103, 108-10 (3d Cir. 1990). "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice[.]" Estelle, 429 U.S. at 107. A mere difference of opinion between the inmate and the prison's

12

medical staff regarding the diagnosis or treatment that the inmate receives does not support a claim of cruel and unusual punishment. See McFadden v. Lehman, 968 F. Supp. 1001 (M.D. Pa. 1997); Young v. Quinlan, 960 F.2d 351, 358 n.18 (3d Cir. 1992).

   Larkin is merely taking issue with the medical decisions of Defendants Cama and Isaacson. In sum, negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d at 69. Furthermore, the only involvement of Defendant Browning, as noted, was addressing Larkins' grievances. Such a claim is not cognizable. There are no allegations that Warden Browning, a non-medical defendant, was personally involved in any medical treatment decisions. Rather, Larkin premises Browning's liability solely on the theory of respondeat superior. As discussed above, liability under § 1983 cannot be based on respondeat superior. Capone, 868 F.2d at 106. Moreover, a claim of deliberate indifference to Larkin's medical needs cannot lie against Browning because Larkin alleges that he was treated by medical personnel. Durmer, 991 F.2d at 69.

   Also, with respect to Defendant Browning, the court discerns no allegations in the complaint that he was involved in any conduct which violated Larkin's constitutional rights. His

13

involvement with respect to the handling of Larkin's grievances is insufficient as a matter of law to render him liable. "[T]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, No. 96-6977, 2000 WL 873285, at *16 (E.D. Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir.2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F. Supp. 332, 343 (S.D.N.Y. 1997) ("[I]t appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Beard, No. 07-727, 2008 WL 2887810, at *4 (W.D.Pa. July 23, 2008) ("Such a premise for liability [i.e., for performing a role in the grievance process] fails as a matter of law."), 324 F. App'x 186 (3d Cir. 2009); Caldwell v. Hall, No. 97-8069, 2000 WL 343229, at *2 (E.D. Pa. March 31, 2000) ("The

failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Comings, No. 92-6442, 1993 WL 418361, at *2 (E.D. Pa. Oct. 13, 1993) ("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Jefferson v. Wolfe, No. 04-44, 2006 WL 1947721, at *17 (W.D. Pa. July 11, 2006) ("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080, at * 4 (E.D. Pa. Sept. 5, 1997). Consequently, Larkin's claims against Defendant Browning are not viable and the complaint as it relates to him will be dismissed.

Under even the most liberal construction, the complaint as it relates to all of the defendants fails to state a claim upon which relief can be granted. There are no factual allegations, but merely conclusory allegations of wrongdoing.

Although the complaint as filed fails to state a cause of action against the medical defendants, it is possible that the deficiencies may be remedies by amendment. Consequently, Larkin will be granted such an opportunity. Larkin is also advised that the amended complaint must be complete in all respects. It must be a new pleading which stands by itself without reference to the

complaint already filed.  Such amended complaint should set forth his claims in short, concise and plain statements.  It should specify which actions are alleged as to which defendants.  If Larkin fails to file an amended complaint adhering to the standards set forth above, this case will be closed.

An appropriate order will be entered.